IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RYAN WOOD, et al.,

                    Plaintiffs,

v.

GARRETT WELCH, et al.,

                    Defendants.

Case No. 22-2279-DDC

## MEMORANDUM AND ORDER

When a tow truck shows up to repossess property, a disturbance may ensue, and it's not uncommon for someone to involve the police. A tow truck is owned, of course, by a private party. But if police officers intervene in the repossession too substantially, then the repossession can begin to look like state action. And the state, of course, can't seize property without a warrant or without any process. So, if officers affirmatively intervene to aid the repossessor, they risk liability for violating the Constitution. Plaintiffs Ryan and Waymond Wood allege defendant Officer Garrett Welch did just that.

Both ends of the caption have moved for summary judgment. Doc. 64; Doc. 66. For his part, Officer Welch asserts he's entitled to qualified immunity against plaintiffs' claims. As explained below, the court agrees, and grants Officer Welch's Motion for Summary Judgment (Doc. 64). This decision moots plaintiffs' Motion for Summary Judgment (Doc. 66). So it denies that motion.

The court's work to explain its reasoning begins with the relevant background.

## I.        Background

Plaintiffs purchased a 2009 Ford Flex from Miller Investment[1] in September 2021.  Doc. 63 at 3 (Pretrial Order ¶ 2.a.iv.).  Plaintiffs fell behind on the Ford's payments.  *Id.* (Pretrial Order ¶ 2.a.v.).  So, Miller Investment hired Heartland Recovery, Inc. to repossess the Ford.  *Id.* (Pretrial Order ¶ 2.a.vii.).  And, in March 2022, Heartland Recovery sent a tow truck to plaintiffs' address.  *Id.* (Pretrial Order ¶¶ 2.a.viii., 2.a.ix.).  The Ford was parked in plaintiffs' driveway.  *Id.* (Pretrial Order ¶ 2.a.viii.).

The Heartland Recovery tow truck backed up to the Ford in the driveway and parked, with part of the truck in the driveway and part of the truck in the street:



Doc. 66-6 (Pls. Ex. E).  As the tow truck driver approached plaintiffs' home, holding papers, plaintiff Waymond Wood walked into the driveway.  *Id.*  Waymond[2] testified, "I was actually

---

[1]        Plaintiffs initially sued Miller Investment, but since have dismissed it as a defendant.  Doc. 62.

[2]        Because plaintiffs have the same last name, this Memorandum and Order uses each plaintiff's first name for clarity.

going out, because I had a job that I had to go do, and I was going to start it, it was cold." Doc.
66-3 at 7 (W. Wood Dep. 18:15–20).  Waymond didn't know he and his husband had fallen
behind on payments for the Ford.  *Id.* at 8–9 (W. Wood Dep. 20:25–21:4).  Waymond thought
the tow truck was "here to steal another vehicle of ours."  *Id.* at 9 (W. Wood Dep. 21:5–11).

Waymond walked up to the Ford on the driver's side.  Doc. 66-6 (Pls. Ex. E).  As
Waymond approached the car, the tow truck driver said, "No, no, no."[3]  *Id.*  Waymond
responded, "Oh yes."  *Id.*  And he got into the car.  *Id.*  The tow truck driver returned to his truck
and backed his tow truck toward the Ford:



*Id.*[4]

---

[3]    Waymond testified that he didn't hear what the tow truck driver said.  Doc. 66-3 at 8 (W. Wood
Dep. 20:5–8).  Waymond explained, "If he was saying anything, I didn't hear him, because he was in his
truck."  *Id.*  But, as shown in the video, and the above image, the tow truck driver exited his vehicle and
approached the home.

[4]    Plaintiffs frame the tow truck driver's actions as "quickly turn[ing] the truck to angle the corner
of the flat bed at Plaintiff Waymond Wood's head" and "accelerat[ing] the truck to jerk the corner of the
flat bed tow truck toward Plaintiff Waymond Wood multiple times."  Doc. 66 at 6.  Defendant objects to
this framing as argument—not facts.  Doc. 69 at 9–10.  The court agrees with defendant; plaintiffs'

Waymond yelled at Ryan to call the police.  Doc. 66-6 (Pls. Ex. E).  Waymond reversed the Ford and drove it through the yard to get around the tow truck:



Doc. 66-7 (Pls. Ex. F).

Waymond drove away, and the tow truck followed.  *Id.*  Waymond planned to drive to a job, but he realized the tow truck was behind him and he didn't have his phone.  Doc. 66-3 at 10–11 (W. Wood Dep. 25:9–26:6).  So, Waymond drove toward his house, and "did small loops until [he] saw the police were there."  *Id.*  When Waymond saw a police officer, he flagged the officer down, and the tow truck driver stopped following him.[5]  *Id.* at 12 (W. Wood Dep. 27:10–

---

characterization is a bit much.  For summary judgment purposes, it's enough to know that the truck backed toward the Ford at an angle, as shown above.

[5]      Plaintiffs' statement of fact asserts, "Heartland's repossession agent gave up, broke off the chase, and left the area."  Doc. 66 at 7.  Defendant controverts this fact as argument because, he argues, plaintiffs have failed to support this fact with any supporting material in the summary judgment record.  Doc. 69 at 11.  As support, plaintiffs cite Waymond's deposition, where he testifies, "The tow truck driver kept going straight, went north to 6th, and then turned east."  Doc. 66 at 7 (citing Doc. 66-3 at 13 (W. Wood Dep. 30:1–3)).

20).  The parties dispute whether Heartland Recovery had given up on repossessing the Ford by this point.

Meanwhile, Ryan called the police.  Doc. 66-9 (Pls. Ex. H).  Ryan explained a tow truck had parked in the driveway, preventing Waymond from leaving.  *Id.* at 0:05–0:012.  Ryan also said the tow truck was attempting to hit the Ford.  *Id.*  Ryan further reported Waymond had left the driveway, and the tow truck "chased after" Waymond and "blew through a stop sign."  *Id.* at 1:50–2:44.  Lawrence Police dispatched defendant, Officer Garrett Welch, in response to Ryan's call.  Doc. 63 at 3 (Pretrial Order ¶ 2.a.xi.).

When Officer Welch arrived, Ryan told him the tow truck had tried to block Waymond from leaving.  Doc. 66-5 at 7 (R. Wood Dep. 58:6–13).  Ryan testified he "brought up breach of . . . the peace"[6] to Officer Welch, but Officer Welch "didn't really seem phased by" this.  *Id.* at 9 (R. Wood Dep 65:10–16).  Ryan also showed Officer Welch a video of the events.  *Id.* at 11 (R. Wood Dep. 69:11–24).  Officer Welch testified the video "depict[ed] the tow truck driver arriving on scene, walking up toward the front door with a piece of paperwork, and then the tow truck driver suddenly looks to his left and then sprints back to the tow truck, and then the vehicle in question drives through the yard[.]"  Doc. 65-2 at 2–3 (Welch Dep. 20:18–21:1).

At some point—the record isn't clear exactly when—Officer Welch ordered the tow truck to return to plaintiffs' address.  Doc. 66-5 at 8 (R. Wood Dep. 64:1–7); Doc. 66-10 (Pls. Ex. I).  Both Heartland Recovery and Waymond returned to plaintiffs' address, while Officer Welch was present.  Doc. 63 at 3 (Pretrial Order ¶ 2.a.xii.).  Officer Welch told Ryan that if

---

[6]     Defendant points out—correctly—that whether something qualifies as a breach of the peace is a legal conclusion.  Doc. 69 at 12; *see also Butler v. Ford Motor Credit Co.*, 829 F.2d 568, 569–70 (5th Cir. 1987) ("Thus the question is whether [the] repossession constituted a breach of the peace.  The answer required a legal conclusion by the district court[.]").  The court thus views this fact merely as Ryan's opinion that a breach of the peace occurred.

Heartland Recovery had the repossession paperwork, then plaintiffs had to return the vehicle. Doc. 69-2 at 4–5 (R. Wood Dep. 64:22–65:9).  Officer Welch told plaintiffs the Heartland Recovery driver "had repossession paperwork for their Ford Flex that was in the driveway, which [he] confirmed by looking at the VIN."  Doc. 69-1 at 3 (Welch Dep. 21:14–17).  Ryan admitted to Officer Welch that plaintiffs were behind on the Ford's payments.  *Id.* at 4 (Welch Dep. 22:8–12); Doc. 69-2 at 2–3 (R. Wood Dep. 58:24–59:3).  Plaintiffs removed their personal property from the Ford.  Doc. 69-2 at 6 (R. Wood Dep. 71:17–19).  Officer Welch told the Heartland Recovery driver to back up to secure the Ford.  *Id.* at 7 (R. Wood Dep. 72:5–8).  And, ultimately, Heartland Recovery repossessed the Ford.  Doc. 63 at 3 (Pretrial Order ¶ 2.a.xiii.).

The court must recount a few additional details about Officer Welch's role in the repossession; the importance of these additional details will become apparent later.  Officer Welch stood by and watched the repossession.  Doc. 69-3 at 1 (Welch Aff. ¶ 9).  Officer Welch never told plaintiffs he would arrest them or take them to jail for failing to comply with the repossession.  *Id.* (Welch Aff. ¶¶ 7, 8).  Though Officer Welch never explicitly told plaintiffs that their conduct risked arrest or jail, Ryan testified,

> [H]e did tell me to keep trying to call the finance company . . . and . . . I had told him they were supposed to be giving me a call back, and he said well, hopefully they call back here shortly, because this vehicle is leaving; there's basically no way around not giving up the vehicle.  And I wasn't about to object to a law enforcement officer who's supposed to help protect you or whatever and object.  I don't know what you're supposed to do when an officer tells you what to do except to provide what they tell you to do.

Doc. 70-2 at 7 (R. Wood Dep. 71:2–16).  In plaintiffs' view, Officer Welch had conveyed to them that failure to comply would result in an arrest or jail.

Plaintiffs filed suit and have brought a claim against Officer Welch under 42 U.S.C. § 1983 for violating their constitutional rights.  Doc. 63 at 13 (Pretrial Order ¶ 4.a.iii.).

6

## II.        Legal Standard

Summary judgment is appropriate when the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to

7

affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The federal courts don't view summary judgment as a "disfavored procedural shortcut[.]" *Celotex*, 477 U.S. at 327. To the contrary, it's an important procedure "designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

While a court can treat cross motions for summary judgment separately, and "the denial of one does not require the grant of another[,]" *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979), it also may address the legal arguments together, *Berges v. Standard Ins.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010). Here, the two motions, and their legal arguments, overlap—and substantially so. The court thus exercises its discretion and addresses together the legal arguments made by the dueling motions.

## III.      Analysis

Plaintiffs argue they are entitled to summary judgment on their § 1983 claim. According to plaintiffs, no reasonable factfinder could disagree that Officer Welch's conduct deprived plaintiffs of their Fourth Amendment rights. That is, plaintiffs contend Officer Welch seized their property, the Ford, without a warrant. Officer Welch, predictably, disagrees. He argues he's entitled to summary judgment. Officer Welch contends no reasonable factfinder could conclude that he assisted with the repossession. Officer Welch also argues he's entitled to qualified immunity and thus entitled to judgment as a matter of law. To decide this case, the court need only decide Officer Welch's qualified immunity argument.

A.      **Qualified Immunity Standard**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).  Qualified immunity is "'immunity from suit rather than a mere defense to liability.'"  *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  So, courts should resolve qualified immunity questions "'at the earliest possible stage in litigation.'"  *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

To establish a § 1983 claim against an individual defendant who asserts the defense of qualified immunity, plaintiffs must (1) come forward with facts that "make out a violation of a constitutional right[,]" and (2) demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A court has discretion to determine "which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances in the particular case at hand."  *Id.* at 236. Addressing the clearly established question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question."  *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 239).

Below, in part B, the court heeds the Circuit's directive and decides to address only the clearly established prong.

## B.        Clearly Established

To determine whether plaintiffs' rights were clearly established, the court must discern the legal right at issue.  To discern plaintiffs' legal rights here, the court first must explain how a private repossession implicates the Fourth Amendment and the Fourteenth Amendment.[7]

The Fourth Amendment protects "the people . . . against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  A repossession is, of course, a seizure.  "A 'seizure' occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"  *McLinn v. Thomas Cnty. Sheriff's Dep't*, 535 F. Supp. 3d 1087, 1100 (D. Kan. 2021) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  "Under the Fourteenth Amendment, procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors."  *Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

---

[7]        In the Pretrial Order, plaintiffs bring a claim under § 1983, alleging Officer Welch violated their Fourth, Fifth, and Fourteenth Amendment rights.  Doc. 63 at 13 (Pretrial Order ¶ 4.a.iii.).  Both the Fifth and Fourteenth Amendment guarantee citizens' due process rights.  But only one due process amendment can apply here.  "Plaintiffs pursuing procedural due process claims based on actions by the *federal* government must proceed under the Fifth Amendment, while plaintiffs bringing such claims based on actions by *state* governments must proceed under the Fourteenth Amendment."  *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (10th Cir. 2020) (emphases added).  Nowhere do plaintiffs allege any involvement by the federal government.  The court thus considers plaintiffs' due process claim as a Fourteenth Amendment claim.

The Fourth and Fourteenth Amendments protect against *government* action.  And "for that reason they do not ordinarily apply to the repossession of a vehicle by a private party." *McLinn*, 535 F. Supp. 3d at 1100–01.  As our Circuit put it, an "essential dichotomy" exists "between government action, which is subject to scrutiny under the" Fourth and Fourteenth Amendments, and "private conduct, which however discriminatory or wrongful, is not subject to" constitutional scrutiny.  *Marcus*, 394 F.3d at 818 (citation and internal quotation marks omitted).  This begs the question:  When does a police officer become so involved in a private repossession that the officer violates the Fourth and Fourteenth Amendments by aiding the repossession?

### 1.     State Action

Our Circuit addressed this question in *Marcus v. McCollum*, 394 F.3d 813.  "[O]fficers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor."  *Id.* at 818.  Officers' conduct in this context operates on a "continuum."  *Id.*  When "an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action."  *Id.* (citation and internal quotation marks omitted).  For obvious reasons, this "area of the law is particularly fact-sensitive," and the Tenth Circuit requires district courts to examine the totality of the circumstances.  *Id.* at 819.

*Marcus* identified several factors that could suggest state action was applied.  "If the evidence showed, for example, that an officer came on the scene at the request of the repossessor and said to the debtor, 'don't interfere with this repossession,' or 'you know you're not the rightful owner of the property,' an officer might be liable."  *Id.* (citation, brackets, and internal quotation marks omitted).  This is so because an "officer's arrival with the repossessor could

give the repossession a cachet of legality and have the effect of intimidating the debtor into not exercising his right to resist, thus facilitating the repossession." *Id.* (citation and internal quotation marks omitted). Other factors include (i) "failing to depart before completion of the repossession," (ii) "standing in close proximity to the creditor," and (iii) "unreasonably recognizing the documentation of one party over another[.]" *Id. Marcus* summarized "the overarching lesson of the case law" this way: "officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Id.* Officers also can't aid a repossession that illegally breaches the peace, as explained next.

### 2.    Breach of the Peace

*Marcus* also "indicated that if there is a breach of the peace, and the repossession is thereby unlawful, an officer who aids the repossession can be liable because 'it stands to reason that police should not weigh in on the side of the repossessor and assist an illegal repossession.'" *McLinn*, 535 F. Supp. 3d at 1101 (quoting *Marcus*, 394 F.3d at 820). Kansas has "adopted UCC provisions allowing secured creditors to repossess property from a defaulting debtor without a judicial order if certain conditions are met. One of those conditions allows a creditor to take possession 'if it proceeds without a breach of the peace.'" *Id.* (quoting Kan. Stat. Ann. §§ 84-9-609(a)(1) & (b)(2)). To determine whether a breach of the peace has occurred, courts apply state law. *See, e.g.*, *id.*; *see also Marcus*, 394 F.3d at 820 (applying Oklahoma law on breach of peace).

With these legal standards in mind, the court considers, next, whether plaintiffs have shouldered their qualified immunity burden to show that Officer Welch violated clear established law.

### 3.      Plaintiffs Have Failed to Show Their Rights Were Clearly Established

Officer Welch argues he's entitled to qualified immunity because the law wasn't clearly established. Qualified "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "[G]overnment officials performing discretion duties, like [Officer Welch] here, are immune from suit so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known." *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1123 (D. Kan. 2021) (citing *Pearson*, 555 U.S. at 231). This standard is an objective one. "Whether an official is protected by qualified immunity turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted." *Id.* (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).

"The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" *Wesby*, 583 U.S. at 63 (quotation cleaned up) (first citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); then citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)). This kind of authority usually takes the form of case law. "Ordinarily, a plaintiff may satisfy this clearly-established-law standard by identifying an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation cleaned up). This standard doesn't require a perfect match in the form of "a case directly on point," but plaintiffs must provide a close match—

"existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

To determine whether plaintiffs' constitutional rights were clearly established, the court must first define the right with care. "[N]early every right—if viewed at a sufficiently high level of generality—is clearly established." *Kan. Motorcycle Works*, 569 F. Supp. 3d at 1123–24 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). So, the court must engage in a "narrowly tailored and context-specific exercise." *Id.* at 1123. The "precise contours of the right must have been so clear that every reasonable official in that circumstance would have understood that what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct." *Id.* at 1124.

To shoulder their qualified immunity burden, plaintiffs rely on *Marcus*. Doc. 70 at 25.[8] But the facts of this case differ markedly from *Marcus*. In *Marcus*, a car repossessor contacted a police officer before the repossession began so that the officer would watch and "be aware of the situation." 394 F.3d at 816. During the repossession, the car owner's wife emerged from her residence and protested the repossessor's right to the car. *Id.* Noting the developing dispute, the watching police officer called for backup and four police officers quickly arrived. *Id.* Once on scene, officers allegedly told the owner's wife and her minor son "to stop their interference" and

---

[8]    Plaintiffs' Response opposing Officer Welch's Motion for Summary Judgment cites three cases in its clearly established analysis. Doc. 70 at 24–26. Only one of those cases—*Marcus*—represents Supreme Court or published Tenth Circuit precedent required by the legal standard governing the clearly established analysis. *Cummings*, 913 F.3d at 1239. One of the other two cases, *McLinn*, is a case from the district court. 535 F. Supp. 3d 1087. *McLinn* is factually distinct from this case because the repossessor requested law enforcement presence and the police officer put his hand on his gun when telling the owner not to resist. *Id.* at 1097–98. And, in *McLinn*, the repossessor didn't provide any paperwork to justify the repossession. *Id.* at 1098. Plaintiffs also cite a Kansas state court case about breach of the peace. Doc. 70 at 26 (citing *Wade v. Ford Motor Credit Co.*, 668 P.2d 183, 189 (Kan. 1983)). *Wade* also is far afield; the borrower in that case threatened to shoot the repossessor. 668 P.2d at 184. The repossessor later returned and silently took the car at 2:00 AM. *Id.* at 184–85. No police officers were involved, until the borrower called the police after she noticed her car was missing. *Id.* at 185. That just leaves *Marcus*, addressed above.

instructed them to let the repossessors "do what they're going to do and take it up in small claims court." *Id.* Officers also allegedly warned that "if the situation escalated, 'someone' would be going to jail." *Id.* And officers poked the car owner's minor son forcefully in the chest several times, knocking him backwards. *Id.* The repossessor showed police nothing more than a piece of paper with a vehicle identification number on it. *Id.* Officers never asked for more documentation. *Id.* The Circuit declined to apply qualified immunity in those circumstances because "[g]enuine issues of material fact exist[ed] regarding whether reasonable officers, facing the circumstances of this case, would consider the actions here violative of plaintiffs' constitutional and statutory rights." *Id.* at 824.

Here, the uncontroverted facts show simply that Officer Welch didn't display the preferential conduct extended to the repossessor in *Marcus*. Officer Welch didn't arrive with the repossessor, tell plaintiffs to stop interfering, threaten them with jail, or physically touch anyone. To be sure, plaintiff Ryan Wood testified Officer Welch told him to contact the finance company to sort out plaintiffs' dispute and there was "basically no way around not giving up the vehicle." Doc. 70-2 at 7 (R. Wood Dep. 71:2–16). Ryan also explained he didn't object, testifying, "I don't know what you're supposed to do when an officer tells you what to do except to provide what they tell you to do." *Id.* Even giving full weight to Ryan's testimony about his subjective views, it remains undisputed that Officer Welch never threatened plaintiffs with arrest or jail. And it's undisputed that Ryan admitted to Officer Welch that plaintiffs were behind on payments. Because this case is factually distinct from *Marcus*, plaintiffs have a tall hill to climb to show that *Marcus* clearly establishes that Officer Welch's actions violated clearly established law. Plaintiffs complain that Officer Welch ordered Heartland Recovery back to the scene,

weighed evidence, directed plaintiffs to turn over the vehicle, and stayed on the scene.  The court takes up each action, below.

*First*, plaintiffs make much of Officer Welch's decision to order the Heartland Recovery tow truck driver to return to plaintiffs' house.  They argue that, without this intervention, the repossession wouldn't have occurred.  The court has assumed that's true.  But the court is unaware of any clearly established law suggesting an officer, summoned to a repossession-turned-car-chase, impermissibly interferes when he orders the tow truck to return.  To the contrary, once summoned to help, an officer "may act to diffuse a volatile situation[.]"  *Marcus*, 394 F.3d at 819.  Absent law to the contrary, this could include summoning parties to the scene of the dispute.  Plaintiffs haven't proffered any authority that ordering the tow truck to return equates to intervening affirmatively in aid of the repossession.  Put another way, plaintiffs haven't proffered any authority that an officer ordering the repossessor to return means the officer has chosen a side.  And so, no reasonable officer standing in Officer Welch's shoes could have believed that it was unlawful to direct Heartland Recovery to return to plaintiffs' home.

*Second*, plaintiffs accuse Officer Welch of holding a "curbside courtroom" and impermissibly weighing evidence.  According to plaintiffs, the law clearly established that he couldn't do that.  Indeed, in *Marcus*, our Circuit held the "police should not weigh in on the side of the repossessor and assist an illegal repossession."  *Id.* at 820.  In light of this, a "curbside courtroom, in which officers decide who was entitled to possession, is precisely the situation and deprivation of rights to be avoided."  *Id.* (citation and internal quotation marks omitted).  But that's not what happened here.  When Officer Welch arrived, plaintiff Ryan Wood showed him the video of plaintiff Waymond Wood and the tow truck driver in the driveway.  Even assuming this driveway incident and the subsequent car chase qualify as a breach of the peace, those events

16

had ended.  Plaintiffs have proffered no authority that an earlier breach of the peace renders a
subsequent repossession—after police have arrived—unlawful.  Put differently and rhetorically,
what should an objectively reasonable officer do with the evidence about an earlier breach of the
peace?  The breach of the peace was over.  And the breach of the peace has nothing to do with
the ultimate question in a repossession—who is entitled to possession.  It's simply not clear
whether an officer with information about an earlier breach of the peace should stop a second
repossession once he has arrived and peace is restored.  And that is why no reasonable officer in
Officer Welch's position would know that his actions, once he arrived, violated clearly
established law.

*Third*, plaintiffs argue Officer Welch violated clearly established law by directing
plaintiffs to turn over the vehicle.  But "[m]ere approval of . . . a private party is not sufficient to
justify holding the State responsible for those initiatives[.]"  *Marcus*, 394 F.3d at 818 (citation
and internal quotation marks omitted).  Officer Welch told Ryan that if Heartland Recovery had
the repossession paperwork, then plaintiffs had to return the vehicle.  Doc. 69-2 at 4–5 (R. Wood
Dep. 64:22–65:9).  Officer Welch told plaintiffs the Heartland Recovery driver "had
repossession paperwork for their Ford Flex that was in the driveway, which [he] confirmed by
looking at the VIN."  Doc. 69-1 at 3 (Welch Dep. 21:14–17).  Ryan admitted to Officer Welch
that plaintiffs were behind on the Ford's payments.  *Id.* at 4 (Welch Dep. 22:8–12); Doc. 69-2 at
2–3 (R. Wood Dep. 58:24–59:3).  Given this admission, no reasonable officer would know that
ordering plaintiffs to return the vehicle—when there was no dispute that the repossessor had the
right to repossess the Ford—violated the law.

*Last*, plaintiffs argue Officer Welch violated clearly established law by staying on the
scene.  Indeed, *Marcus* provides that one factor to consider is whether the officer "fail[s] to

depart before completion of the repossession[.]"  394 F.3d at 819.  But *Marcus* also provides that "a police officer's standby presence to observe and maintain the peace at a self-help repossession does not amount to official participation in a repossession or seizure."  *Id.* at 824.  So, no reasonable officer in Officer Welch's position could've known that remaining at the scene violated clearly established law.

Even putting all four actions together, Officer Welch's conduct lands, at most, in a grey area on the Tenth Circuit's continuum of appropriate law enforcement conduct at a repossession. Unfortunately for plaintiffs, to show that the law was clearly established, they needed black and white.  Plaintiffs thus have failed to shoulder their burden to show Officer Welch violated clearly established law, and Officer Welch is entitled to qualified immunity.

## IV.      Conclusion

Officer Welch is entitled to qualified immunity.  The court thus grants his Motion for Summary Judgment (Doc. 64).  As a result, the court denies plaintiffs' Motion for Summary Judgment (Doc. 66).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Garrett Welch's Motion for Summary Judgment (Doc. 64) is granted.

**IT IS FURTHER ORDERED THAT** plaintiffs Ryan Wood and Waymond Wood's Motion for Summary Judgment (Doc. 66) is denied.

**IT IS SO ORDERED.**

**Dated this 7th day of June, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**